Raymond J. DONOVAN, Secretary of the United States Department of Labor, Plaintiff-Appellant,

v.

NATIONAL BANK OF ALASKA, Defendant-Appellee.

No. 81–3562.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 1982.

Decided Jan. 10, 1983.

---

Sherwin Kaplan, Washington, D.C., for plaintiff-appellant.

Eugene J. Metzger, Washington, D.C., for defendant-appellee; Charles Dunnagan, Jermain, Dunnagan & Owens, Anchorage, Alaska, Merzger, Shadyac & Schwarz, Washington, D.C., on brief.

Before HUG, SKOPIL, and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

The sole issue raised in this case is whether the Secretary of the United States Department of Labor is entitled to enforcement of a subpoena requesting information pertaining to the bank's ERISA accounts. The district court quashed the subpoena and dismissed the action. We note jurisdiction under 28 U.S.C. § 1291 (1976) and reverse.

## I

### FACTS

The United States Department of Labor is conducting an investigation of the National Bank of Alaska to determine whether any individual is violating or has violated any provision of Title I of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* (1976). In the course of its investigation, an administrative subpoena *duces tecum* was served on the bank.

The subpoena has two parts. The first part requires the bank to produce general information, *e.g.*, the names of all employee benefit plans whose assets are held by the bank along with the name and address of the plan sponsor and the total amount of plan assets held. The subpoena then goes on to state that upon receipt of the above information, the Department of Labor will select 25 plans for more thorough examination. With respect to these 25 plans, the subpoena requires the following:

[A]ll documents maintained by the bank relating to transactions or dealings with, for or on behalf of the employee benefit plans selected, including but not limited to: any correspondence; memorandum;

notes; agreements; drafts of agreements; contracts; draft minutes or records of telephone conversations; meetings or conferences; books; diaries; logs; calendar notations; financial statements; balance sheets; computer printouts; ledgers and journals and supporting documents; bank statements, cancelled checks, check stubs; deposit slips, remittance records of all checks deposited or cashed and amounts withdrawn through other banks and agencies; loan, real estate, and credit files; bills; books of account; [etc.]

After the bank refused to comply with the subpoena, this action was filed.

The trial court entered an order dismissing the Secretary's petition for enforcement of the subpoena and granting the bank's motion to quash. The only reason stated in the trial court's decision was that "the Secretary of Labor has not authorized the investigation as to which the subpoena dated January 23, 1981 was issued." The Secretary appeals from that order, seeking both reversal and an order directing the district court, on remand, to issue an order enforcing the subpoena in its entirety.

## II

## ANALYSIS

A. Does the Secretary of Labor have authority to delegate his investigative powers?

■ In quashing the subpoena, the district court apparently relied solely on the ground that Secretary Donovan did not personally sign the subpoena or authorize the investigation. The Bank contends that this ruling should be sustained on appeal for any one of three reasons. We disagree.

The Bank's first argument on this issue rests primarily on two Supreme Court cases: *Cudahy Packing Co. v. Holland,* 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895 (1942) and *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). Neither of these decisions, which stand for the proposition that courts will not assume authority on the part of the head of a federal

agency to subdelegate in the face of clear legislative prohibitions against such delegations, provides a basis for quashing the subpoena in this case.

In *Fleming v. Mohawk Wrecking & Lumber Co.,* 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947), the Supreme Court retreated from the broad language in *Cudahy* by confining that case to its facts, including the fact that the legislative history of the statute involved in *Cudahy* indicated that a specific provision granting authority to delegate had been removed in conference. The erosion of *Cudahy,* commenced in *Fleming,* was completed by the Reorganization Act of 1949, ch. 226, § 2 *et seq.,* 63 Stat. 203 (current version at 5 U.S.C. § 901 *et seq.* (1976)), and the various reorganization plans prepared and promulgated thereunder. The Act explicitly authorizes the President to issue reorganization plans that provide for "the authorization of an officer to delegate any of his functions." 5 U.S.C. § 903(a)(5). Pursuant to the Act, President Truman promulgated Reorganization Plan No. 6 of 1950, which in pertinent part states:

The Secretary of Labor may from time to time make such provisions as he shall deem appropriate authorizing the performance by any other officer, or by any agency or employee, of the Department of Labor of any function of the Secretary. . . .

Reorg. Plan No. 6 of 1950, § 2, 15 Fed.Reg. 3174 (1950), *reprinted in* 5 U.S.C.A. App. at 234 (1975), *and in* 64 Stat. 1263. Consequently, the *Cudahy* prohibition on subdelegation of authority is entirely inapplicable here, since the relevant legislative directive does not ban or remain silent on the question of subdelegation by the Secretary. Rather, it explicitly authorizes a subdelegation of authority by the Secretary of Labor. *Cf. United States v. Marshall Durbin & Co.,* 363 F.2d 1 (5th Cir.1966); *FTC v. Gibson,* 460 F.2d 605 (5th Cir.1972) (per curiam).

The Supreme Court's 1974 opinion in *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341, did not resurrect the broad language used in *Cudahy.* As this court has recognized:

The Court in *Giordano* held that Title III did not permit the Attorney General to delegate to any subordinate, other than a specially designated Assistant Attorney General, the power to authorize application for intercept orders. This prohibition of a delegation proper in other instances was intended by Congress to centralize in "a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques" . . . *United States v. Turner,* 528 F.2d 143, 151 (9th Cir.) (quoting S.Rep. No. 1097, 90th Cong., 2d Sess. 96–97 (1968)), *cert. denied,* 423 U.S. 996, 96 S.Ct. 426, 45 L.Ed.2d 371 (1975); *see also Tabor v. Joint Board for Enrollment of Actuaries,* 566 F.2d 705, 708 n. 5 (D.C.Cir.1977). Congress has evidenced no such intent with respect to the Secretary of Labor's subpoena powers. There are no restrictions placed on the Secretary's right to delegate investigative authority and, with regard to issuing subpoenas, ERISA § 504, 29 U.S.C. § 1134(c) (1976), expressly makes available to the Secretary "or any officers designated by him" those provisions of the Federal Trade Commission Act relating to the attendance of witnesses and the production of documents. The Secretary exercised that authority in two Department of Labor directives concerning enforcement of pension and welfare benefit programs.

Acceptance of the bank's argument would paralyze the Department's enforcement program with regard to ERISA and, perhaps, any other departmental enforcement efforts. *Cf. SEC v. Arthur Young & Co.,* 584 F.2d 1018, 1026 (D.C.Cir.1978) (requirement of detailed subpoenas would frustrate SEC investigations), *cert. denied,* 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979); *Penfield Co. v. SEC,* 143 F.2d 746, 750 (9th Cir.) (contention that authority to determine what matters are material to investigation cannot be delegated to regional administrator would require all proceedings to be conducted by SEC itself), *cert. denied,* 323 U.S. 768, 65 S.Ct. 121, 89 L.Ed. 614 (1944).

■ The Bank next argues that even if the Secretary has power to delegate authority to conduct investigations, he can properly delegate authority to investigate national banks only to appropriate federal banking officials. The second sentence of 29 U.S.C. § 1134(c) provides that "the Secretary *may* delegate his investigative functions . . . with respect to insured banks acting as fiduciaries of employee benefit plans to the appropriate federal banking agency." 29 U.S.C. § 1134(c) (1976) (emphasis added). However, the immediately preceding sentence of § 1134(c) provides that subpoena powers are "hereby made applicable . . . to the jurisdiction, powers, and duties of the Secretary *or any officers designated by him.*" 29 U.S.C. § 1134(c) (emphasis added).

The legislative history of the statute makes clear that the Secretary's power to delegate investigative functions to federal banking officials under the second sentence of § 1134(c) was legislated "in addition" to his power to delegate subpoena powers to Labor Department officials under the first sentence of § 1134(c). *See* H.Rep. No. 93–1280, 93d Cong., 2d Sess. 329, *reprinted in* III *Legislative History of the Employee Retirement Income Security Act of 1974,* at 4596 (1976). The second sentence of § 1134(c) was intended to expand the Secretary's power to delegate his investigative functions beyond his own subordinates in the Department of Labor to federal banking officials and *not* to confine the Secretary's delegational power to those outside officials.

■ Finally, the Bank appears to argue that any purported delegation of authority to initiate this investigation is invalid because the delegation of authority had been undertaken not by Secretary Donovan, but by former Secretary Marshall and former Secretary Marshall's subordinates. We disagree. As the Fourth Circuit has held: "The acts of administrative officials continue in effect after the end of their tenures until revoked or altered by their successors in office. Any other general rule would impose an undue burden on the administra-

tive process." *United States v. Wyder,* 674 F.2d 224, 227 (4th Cir.1982).

**B. Can this court direct the district court to issue an order enforcing the subpoena?**

In addition to the contention discussed above, the bank, in the trial court, argued that: (1) a prior consent decree in *Marshall v. National Bank of Alaska* and the accompanying letter agreement prohibit enforcement of the Secretary's subpoena; (2) some requested documents might be subject to the Right to Financial Privacy Act, 12 U.S.C. § 3401 *et seq.* (Supp. III 1979); (3) this is a "John Doe" subpoena within the contemplation of 26 U.S.C. § 7609 (1976), and, therefore, certain restrictions imposed on the IRS by that statute should be applicable as well to the Department of Labor; (4) the subpoena calls for records beyond the scope of a legitimate ERISA inquiry; (5) the Secretary must show reasonable cause for issuance of the subpoena; and (6) the subpoena is unduly vague.

**1. The Prior Consent Decree.**

■ The agreement reached in *Marshall v. National Bank of Alaska* states that in return for the bank's voluntary production of records, the Secretary will not investigate further the loans and financial transactions of the bank named in that action. Contrary to the bank's argument, the settlement in *Marshall* related solely to the bank's role as a fiduciary with respect to specified loans made by two ERISA pension plans. It has nothing to do either with other transactions of those plans or with the bank's role as to other employee benefit plans. It therefore does not, at least at this juncture, affect compliance with this subpoena.

**2. The Financial Privacy Act.**

■ The Financial Privacy Act, 12 U.S.C. § 3401 *et seq.* (Supp. III 1979), was enacted by Congress in response to a pattern of government abuse in the area of individual privacy. The Act was intended to protect the customers of financial institutions from unwarranted intrusion into their records while at the same time permitting legitimate law enforcement activity. Therefore, it seeks to strike a balance between the customers' right of privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations. H.R.Rep. No. 1383, 95th Cong., 1st Sess. 33, *reprinted in* 1978 U.S.Code Cong. & Ad.News 9273, 9305. It permits individuals to contest Government access to certain records held by banks and other financial institutions by requiring the Government authority to notify the bank customer of the subpoena or summons served on the financial institutions as well as the nature of the law enforcement inquiry to which the subpoena or summons relates. 12 U.S.C. § 3405(2) (Supp. III 1979). The Act specifically forbids a financial institution to release the financial records of a customer "until the Government authority seeking such records certifies in writing to the financial institution that it has complied with the applicable provisions" of the Act. 12 U.S.C. § 3403(b) (Supp. III 1979). No certification has been given in this case.

The Secretary argues that no certification is necessary because the Financial Privacy Act explicitly pertains only to records of individuals or partnerships of five or less, 12 U.S.C. § 3401(4) (Supp. III 1979), not to the records of employee benefit plans. With respect to the first part of the subpoena, the Secretary's argument is well-taken. The Department's subpoena, however, is not limited to the records of the plans themselves, but instead seeks "all documents maintained by the bank relating to transactions or dealings with, for or on behalf of the employee benefit plans selected." Under the Act, only "financial records or information which is not identified with or identifiable as being derived from the financial records of a particular customer" may be disclosed without compliance with the procedures prescribed by the Act. 12 U.S.C. § 3413(a) (Supp. III 1979). Where the Department requests records which disclose transactions of bank customers with the plans, its request would fall within the

scope of the Financial Privacy Act, and, absent certification, the bank may legally refuse to produce those records. No such request has been made as yet. The first part of the subpoena requests information pertaining only to the plans. As for the second part of the subpoena, absent selection of the actual plans to be investigated, neither the Department nor the bank has any way of knowing whether any individual privacy rights might be affected. The bank cannot refuse to comply with the subpoena as a whole on the basis of its vague allegations that it might be required at some time in the future to produce records in violation of the Financial Privacy Act. *Cf. United States v. Horton,* 629 F.2d 577, 579 (9th Cir.1980) (fifth amendment privilege may not be raised by blanket assertion but must be interposed in response to specific questions).

### 3. The Tax Reform Act.

■ Certain provisions of the Tax Reform Act of 1976, 26 U.S.C. § 7609 (1976), sought to cure some of the problems arising under the Internal Revenue Code with respect to subpoenas issued to third parties, *i.e.,* persons other than the taxpayer whose tax liability is under investigation. Under the Act if a third party subpoena "does not identify the person with respect to whose liability the summons is issued [called a "John Doe summons"], [it] may be served only after a court proceeding" is held in which the *IRS* establishes the *summons's* reasonableness. 26 U.S.C. § 7609(f).

In the instant case, the Department of Labor admits that its investigation is a joint investigation with the IRS. The cover letter attached to the subpoena sent to the bank, referred to violations of both ERISA and corresponding provisions of the Internal Revenue Code. The reference to the Internal Revenue Code most likely pertains to 26 U.S.C. § 4975 (1976). That section imposes an excise tax of five percent per year until "corrected" on the value of any transaction between a "disqualified person" and an employee benefit plan—a "prohibited transaction." Normally, the tax falls

upon the person who does business with the bank acting as fiduciary for the plan, not upon the bank. It is not clear on the face of the subpoena that the Secretary intends to examine only those plans for which the bank itself is acting as fiduciary. Accordingly, any investigation of "prohibited transactions" necessarily may involve persons other than the bank, *i.e.,* "John Does." The Secretary argues that since the records were subpoenaed solely by the Department of Labor, not by the IRS, that section 4975 does not apply. It makes this argument despite its admission that any information relevant to the IRS would be provided to that agency. The argument suggests that two agencies acting together may achieve indirectly what the IRS is forbidden to achieve directly. The Secretary's reliance on ERISA § 3004, 29 U.S.C. § 1204 (1976), is misplaced. This provision was enacted prior to the Tax Reform Act. Until, however, the bank complies with the first part of the subpoena naming the plans and sponsors, the Department cannot determine its obligations, if any, under the Act.

### 4. Proper Scope.

■ The proper scope of an ERISA investigation can be determined only by reference to the statute itself; the appropriate inquiry is whether the information sought might assist in determining whether any person is violating or has violated any provision of Title I of ERISA. Clearly records identifying specific plans as well as records of the plans themselves fall within the scope of a proper ERISA investigation. *See Donovan v. Shaw,* 668 F.2d 985 (8th Cir.1982); *cf. Newmark & Co. v. Wirtz,* 330 F.2d 576 (2d Cir.1964) (broad investigating purpose sufficient to sustain subpoena under similar provisions of Fair Labor Standards Act, 29 U.S.C. § 211(a)).

### 5. Reasonable Cause.

■ The bank's argument that the Secretary must show reasonable cause prior to issuance of the subpoena is based on two provisions of section 504, 29 U.S.C. § 1134 (1976), neither of which is applicable here.

Section 504(b) applies to records required to be produced more than once in a twelve-month period. The previous settlement order in *Marshall* makes it clear that the Department has no intention to reinvestigate those transactions into which it has previously inquired. Section 504(a)(2) refers to the Secretary's right to enter and inspect rather than to his subpoena power.

6. Vagueness.

The bank's vagueness argument is essentially based on the fact that the subpoena does not indicate which 25 plans the Secretary intends to investigate. Unfortunately, the Secretary cannot select the 25 until the bank complies with the first part of subpoena by indicating for which benefit plans it holds assets.

## III

### CONCLUSION

We reverse the district court's order as to the first part of the subpoena and remand with direction to the district court to order compliance with the first part of the subpoena and for further proceedings at such time as the bank may raise defenses with respect to the records of the specific plans selected by the Department of Labor.