**Ann McLAUGHLIN, Secretary of the United States Department of Labor, Petitioner,**

v.

**Alex BENDERSKY, D.D.S., and Bendersky Professional Corporation, Respondents.**

No. 87 C 7446.

United States District Court, N.D. Illinois, E.D.

Jan. 26, 1989.

**418**

Peter B. Dolan, U.S. Dept. of Labor, Office of the Sol., Sp. Litigation Div., Washington, D.C., for petitioner.

Sheldon Chertow, Marvin A. Miller, Chicago, Ill., for respondents.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Petitioner Ann McLaughlin, in her capacity as Secretary of the United States Department of Labor ("the Department"), brings this action against respondents Alan Bendersky and the Bendersky Professional Corporation (BPC).[1] She seeks to compel respondents to comply with a subpoena duces tecum issued to them by the Associate Director of Enforcement of the Pension and Welfare Benefits Administration ("the PWBA") pursuant to an investigation the PWBA is conducting under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. Respondents, in turn, want the subpoena quashed and the petition to compel denied.

## BACKGROUND

According to the petition and attached exhibits, in May 1983 BPC entered into a contract with the Hotel Employees and Restaurant Employees International Union Welfare Fund ("the Fund"), in which it agreed to provide dental services to the Fund pursuant to a specified rate schedule.[2] The PWBA has apparently been involved in an ongoing investigation into the affairs of the Fund for quite some time, and now wants to examine the records of BPC.

After respondents declined to voluntarily comply with an initial request for all of their business documents and records, the PWBA served them with a subpoena ordering them to produce these materials. Respondents partially complied with the subpoena, providing the PWBA with numerous business documents and records relating to BPC's transactions with the Fund and its beneficiaries. They refused, however, to allow the materials to be copied or otherwise transcribed, and also refused to produce "[a]ll annual or other regular financial statements (audited or unaudited) and supporting documents and workpapers."

Petitioner then filed this action, seeking an order to show cause why the respondents would not comply. Respondents then moved to quash the subpoena on the grounds that the materials they had not produced were irrelevant to any legitimate investigation. They argued that the subpoena did not relate to BPC's contract and transactions with the Fund and thus could not provide evidence of an ERISA violation.

Petitioner subsequently filed an amended petition narrowing the scope of its demands to "only those of respondents' business records or parts thereof (describe in the attachment to each subpoena) that relate to respondents' activities in generating services provided to the [the Fund] identified in [the subpoena]." More specifically, the amended petition sought from the respondents their business records relating to one or more of the following subjects:

> b. any transaction involving any respondent and [the Fund];

---

1. In her memorandum in support of the amended petition, petitioner discussed this case as being against Bendersky, BPC and another corporation, the P.F.C. Facility of New York (PFC). Although a related case, *Brock v. P.F.C. Facility of New York*, No. 87 C 7447 (N.D. Ill.1987), was filed against PFC and is before this court, and although the amended petition makes reference to contracts involving PFC, the amended petition makes no express reference to PFC itself and, accordingly, this court's ruling does not pertain to the case against it.

2. The contract was renewed, with modifications, in May, 1986 and remains in force today.

c. any transaction involving [the Fund] and one or more parties in interest (including but not limited to trustees, administrators, and other fiduciary service providers, and plan sponsors), within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14) (1982)), with respect to the Fund;

d. goods or services or both used by any respondent in generating services provided to [the Fund];

e. any respondent's transactions (including payment of compensation or fees), relating to any respondent's services provided to [the Fund], with respondents' present or former employees, agents, or contractors who performed work relating to those services;

f. transactions relating to any agreement between any respondent and John Dolan relating to services provided to [the Fund];

g. transactions involving any respondent's receipt of credit used, whether directly or indirectly, in supplying services to [the Fund].

Respondents maintain that petitioner has in her possession, or respondents will provide to her, copies of all the business records covered by items (b), (c), (f), and (g). They have also asserted that they will produce documents covered by items (d) and (e) so that petitioner can inspect them, and that they will allow copying of these documents to the extent that the documents are relevant to a possible ERISA violation. So what's the problem?

## DISCUSSION

From the parties' (particularly petitioner's) disorganized explanation of the case, it is a little difficult to know. Apparently, the first area of dispute concerns whether the amended petition, in addition to requiring documents and records of particular transactions relating to BPC's relationship with the Fund, also requires respondents to turn over all "accounting records—ledgers, workpapers, and financial statements—that summarize those underlying transactions." Respondents insist that the amended petition makes no mention of these items, but petitioner correctly notes that the parenthetical in the amended petition incorporates the subpoena's delineation of business records, and that the subpoena clearly refers to ledgers, workpapers and financial statements. Thus, respondents cannot avoid turning over these items on the grounds that petitioner no longer seeks them.

The next argument then appears to be whether, given this reading of the amended petition, respondents must turn over their financial statements and summaries relating to transactions between BPC and the Fund. Respondents seem to say that they are willing to turn these records over, provided that the records do not also contain information relating to BPC's costs, profits and profit margins—information, respondents maintain, that is irrelevant to the PWBA's investigation. Unfortunately, petitioner does not enlighten this court as to whether respondent's acquiescence in this regard narrows further the scope of the dispute here, but this court assumes that it does and expects respondents to so comply.

Finally, one area of clear disagreement between the parties is whether respondents must turn over their financial records and statements relating to their costs and profits in providing services to the Fund. It is this inquiry to which the court now turns.

Section 504(c) of ERISA grants the Secretary of Labor the authority to subpoena any document or records necessary for her to determine whether any person has violated or is about to violate any provision of Title I of ERISA, or any regulation or order issued thereunder. 29 U.S.C. § 1134(c). To establish a prima facie case of its entitlement to the enforcement of the subpoena, petitioner must show that (1) the investigation will be conducted pursuant to a legitimate purpose, (2) the inquiry may be relevant to this purpose, and (3) the information sought is not already within the government's possession. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964).

Respondents do not dispute that petitioner's purported purpose of investigating for possible violations of ERISA is a legitimate

one. Nor do they deny that, with respect to their financial statements regarding BPC's costs, profits and profit margins, these materials are not in petitioner's possession. Respondents do contend, however, the materials are not relevant to PWBA's investigation. Thus, the only question that remains here is a legal one: whether information regarding BPC's costs and profits "might assist in determining whether any person is violating or has violated any provision of Title I of ERISA." *Donovan v. National Bank of Alaska*, 696 F.2d 678, 684 (9th Cir.1983); *cf. United States v. Turner*, 480 F.2d 272, 279 (7th Cir.1973) (information sought by Internal Revenue Service is relevant to investigatory purposes if it "might throw a light upon the correctness of the taxpayer's return").

Petitioner argues that the materials sought might assist the PWBA's investigation in two ways: to determine whether the Fund's trustees breached their fiduciary duties to the Fund by contracting with BPC to provide dental services for Fund beneficiaries, and to determine whether the trustee, BPC or anyone else engaged in illegal transactions related to the Fund. Both of these arguments have as their sources §§ 406 and 408 of ERISA, 29 U.S.C. §§ 1106 and 1108.

■ As a provider of services to the Fund, BPC is a party in interest with respect to the fund under ERISA, 29 U.S.C. § 1002(14)(B). Section 406(a) prohibits certain transactions between ERISA plans and parties in interest, including transactions constituting a direct or indirect "(C) furnishing of goods, services or facilities between [a] plan and a party in interest ... [or] (D) transfer to, or use by or for the benefit of, a party in interest, or any asset of the plan." 29 U.S.C. § 1106(a). Section 408, however, exempts certain transactions from § 406's proscriptions, including contracts involving "reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2).

■ Petitioner's first argument—that she needs information regarding BPC's costs and profits to determine whether the Fund's trustees violated their fiduciary duties to the Fund—focuses on the "reasonable compensation" provision of § 408(b)(2). Petitioner maintains that the information regarding BPC's costs and profits is necessary to determine whether the Fund's trustees breached their fiduciary duties by contracting with BPC. Respondents, however, contend that what is relevant in determining the reasonableness of the contract between BPC and the Fund is the amount BPC charges the fund, and the quality of the services it provides, not how much the services cost BPC or how much profit it makes. This court agrees.

■ Although petitioner insists that BPC's costs and profits can reveal whether or not the Fund would have done better by establishing its own dental care service, she can cite no case, and this court knows of none, holding that an ERISA fiduciary breaches his fiduciary duty simply by virtue of having contracted with a service provider who earns too much on the service. A fiduciary's duty is measured under a standard of objective reasonableness, so to determine whether the fees established by the Fund in its contract with BPC were reasonable, the inquiry must focus not on how much it ultimately cost BPC to provide those services, or how much it made in doing so, but rather on how much a prudent ERISA trustee would have determined was reasonable payment for the services at the time he contracted with BPC.

*Brock v. Robbins*, 830 F.2d 640 (7th Cir. 1987), a case on which petitioner relies heavily, actually supports respondents' position. In *Robbins*, plan fiduciaries were charged with breach of their fiduciary duties for contracting with an insurance company without taking prudent steps in ensuring the reasonableness of the fees the insurance company charged. Although the most important holding of the case was that fiduciaries do not breach their duties by imprudently entering into a contract that turns out to be reasonable, an important aspect of the case for present pur-

poses is the district court's determination, and the Seventh Circuit's affirmance, that the fees paid were reasonable.

In assessing the reasonableness of the contract entered into with the insurance company, the district court in *Robbins* first noted that the contract was executed despite a preliminary determination by the plan's trustee that the plan would self-insure its claims. The court then examined the reasonableness of the plan's contract with the insurance company ultimately chosen by the trustees by analyzing the amount of fees paid by the plan to the insurance company over the course of the contract, expert testimony as to how much other insurers would have charged for equivalent policies, and the testimony of officers of an insurance company which had previously insured the plan. Nothing in the Seventh Circuit's opinion, however, even hints that the district court used any of the insurance company's cost and profit information in ruling that the contract was reasonable. And the Seventh Circuit affirmed that ruling without any reference to such information.

This court's determination that the information petitioner seeks is irrelevant gains further support from an analogous area of law undoubtedly familiar to many of the lawyers in this case. When courts determine how much to award prevailing parties entitled to attorneys fees, they take into consideration the hours of service provided by the attorneys, the extent of the victory, and the prevailing rate for similar attorneys in the geographic area. No court of which this one is aware, however, has found it appropriate to delve into the amount the attorneys pay their secretaries and paralegals, or their balance sheets and profit-and-loss statements, in choosing an appropriate fee award.

Yet, while BPC's cost and profit information is not relevant to whether or not the Fund's fiduciaries violated their fiduciary duty in contracting with BPC, respondents' reliance on this fact in arguing that the information is therefore irrelevant to the PWBA's investigation is predicated on a faulty assumption: that the only reason the PWBA could want this information is to determine whether a breach of fiduciary duty under §§ 406 and 408 occurred.

■ In the Seventh Circuit and elsewhere, a non-fiduciary can be held liable under ERISA for "conspir[ing] with parties who [are] fiduciaries to breach the duties imposed by ERISA." *Brock v. Gerace*, 635 F.Supp. 563, 568 (D.N.J.1986) (citing *Thornton v. Evans*, 692 F.2d 1064, 1078 (7th Cir.1982). Thus, if the Fund's fiduciaries violated their fiduciary duties by contracting with BPC, and if respondents knowingly participated in this breach, then they could be liable under ERISA.

■ From this potential liability, the relevance of BPC's financial records emerges. In determining whether respondents knowingly participated in any breach of fiduciary duty by the Fund's fiduciaries that may have occurred, petitioner will certainly want to know how much BPC was spending, and making, in providing services to the Fund. For this information may help reveal whether BPC knew that the Fund's fiduciaries were acting unlawfully in contracting with BPC, and shed light on what BPC was informing the Fund's fiduciaries about the costs of providing services and the relative benefits of using BPC rather than operating a self-funded dental care service. In this way, the subpoena satisfies the broad relevance requirement of petitioner's subpoena power, *see Marshall v. Amalgamated Insurance Agency Services*, 523 F.Supp. 231 (N.D. Ill.1981), and thus requires this court to enforce the subpoena.

Petitioner's second argument as to how respondents' financial statements and analyses are relevant to its investigation also focuses on § 406's proscription against certain transaction by parties in interest. She maintains that she needs respondents' financial statements to determine whether BPC (or anyone else) has engaged in transactions prohibited by § 406 and not exempted from that section by § 408. Although this court fails to see how information regarding BPC's costs and profits could add any light to the investigation, there is no need to resolve this issue since

this court has already determined that all of the pertinent materials must be produced.

### CONCLUSION

Respondents' motion to quash the subpoena is denied. The parties shall appear at the next status hearing to work out a schedule for respondents to comply with the subpoena.