743 F.Supp. 783 (1990)
UNITED STATES of America, Petitioner,
v.
CUSTODIAN OF RECORDS, SOUTHWESTERN FERTILITY CENTER, Respondent.
No. CIV 90-105-R.
United States District Court, W.D. Oklahoma.
May 15, 1990.
*784 Mary M. Smith, Asst. U.S. Atty., Oklahoma City, Okl., Michael F. Hertz, Ronald H. Clark, Mark D. Polston, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for petitioner.
Robert L. Wyatt, IV, Stephen Jones, Carol Hambrick, Jones, Bryant & Hambrick, Enid, Okl., for respondent.

ORDER DENYING MOTION TO DISMISS AND GRANTING PETITION FOR SUMMARY ENFORCEMENT OF ADMINISTRATIVE SUBPOENA
DAVID L. RUSSELL, District Judge.
Before the Court is a motion filed February 20, 1990 to dismiss the petition for summary enforcement of an administrative subpoena by respondent, Custodian of Records of the Southwestern Fertility Center ("SFC"). Fed.R.Civ.P. 12(b). Petitioner, the Inspector General for the Department of Defense ("DoD IG") responded in opposition on March 6, 1990. Also at issue is the DoD IG's petition filed January 18, 1990 for summary enforcement of administrative subpoena. SFC filed a brief in opposition on April 2, 1990, and DoD IG replied on April 17, 1990.

I. BACKGROUND FACTS AND CONTENTIONS
Drs. Avery and Migliaccio are obstetricians and gynecologists with SFC, 3617 West Gore Boulevard, Lawton, Oklahoma. Both physicians are separately incorporated in Oklahoma. The doctors provide medical care for the Civilian Health and Medical Program of the Uniformed Services *785 ("CHAMPUS"), an agency within DoD that provides primary health benefits for military dependents and retirees. The doctors' practice is commonly known as the "Southwestern Fertility Center," which is a registered name for their clinic in Comanche County, Oklahoma. The name "Southwestern Fertility Center" appears on the doctors' letterhead. The Center is listed in the local phone directory and advertised in local newspapers. The doctors also own a bank account in the name of another registered partnership, A.M. Properties. They have also incorporated part of their practice as A.M. Surgery, Inc. Both doctors use the same IRS identification number when they submit their individual claims to CHAMPUS.
In 1988, CHAMPUS allegedly learned that doctors from the Center may have been reimbursed for reversals of tubal sterilizations, a procedure not covered by CHAMPUS. Wisconsin Physicians Services, which processes claims under a contract with CHAMPUS, reviewed medical records associated with CHAMPUS claims submitted by Dr. Avery. The review allegedly indicated that Dr. Avery may have reversed tubal sterilizations and provided artificial insemination for patients, and then sought reimbursement by designating different, covered, procedures on claim forms for those patients.
In 1988 DoD was advised of possible fraud in connection with CHAMPUS claims filed by the respondent clinic and its doctors. The Federal Bureau of Investigation ("FBI") and DoD's Defense Criminal Investigative Service ("DCIS") are jointly investigating these allegations. Agents interviewed several military dependents covered by CHAMPUS, who allegedly confirmed that doctors at the Center performed reversals of tubal ligations or artificial insemination on them, for which they understood CHAMPUS had paid the Center. The corresponding CHAMPUS claims for these women, prepared by the doctors, did not report these procedures.
On October 26, 1989 the FBI executed a search warrant on the Center at its premises at 3617 West Gore Blvd., Suite C, Lawton, Oklahoma. Agents seized an unknown number of patient files estimated to be in excess of one hundred.[1] On October 27, 1989, the IG's office served an administrative subpoena upon the Custodian of Records for the Center. The subpoena requested the Custodian to produce to a designated agent of the United States, on November 27, 1989, the following: (1) the medical records of specified patients (including electronic data); (2) all billing information presented to CHAMPUS concerning these patients (including electronic data); (3) any videotapes of surgeries performed on these patients; (4) all lists maintained by the physicians and SFC of patients receiving reversals of tubal ligations or artificial insemination procedures, and; (5) records pertaining to employees of the Center.
SFC refused to comply with the subpoena, asserting through counsel, that the subpoenaed documents are the property of the individual physicians, Drs. Avery and Migliaccio. SFC contends that although the FBI and the DoD IG are distinct agencies within the executive branch, by their own admission the FBI and the DCIS are "jointly investigating these allegations."
SFC further contends that the enforcement of the IG subpoena would be unnecessarily duplicative and would extend the interference with the doctors' respective practices although the search warrant was *786 issued with the intent of reducing interferences to a minimum.
Additionally, SFC contends that each doctor has claims pending with CHAMPUS, and this investigation is a subterfuge to avoid payment of those claims to the doctors or to attempt to force a settlement of those claims.

II. PROCEDURAL HISTORY
DoD IG filed its petition for summary enforcement of administrative subpoena on January 18, 1990. That same date DoD IG filed a motion for SFC to show cause why the subpoena duces tecum should not be summarily enforced. On January 23, 1990, this Court issued an Order requiring SFC to respond to the motion for show cause within fifteen days, with a reply to be filed seven days thereafter, and discovery was stayed. On February 6, 1990, this Court enlarged the time for filing the response until February 20, 1990. On that date SFC filed the motion to dismiss now at issue. On February 28, 1990 the Court enlarged the time for DoD IG's reply deadline, and a reply was filed on March 6, 1990.
Thereafter on March 15, 1990, SFC filed a motion for clarification of briefing schedule and leave to file brief. In that pleading SFC argued that it did not receive a copy of this Court's January 23, 1990 Order, and only became aware of it on March 7, 1990.
SFC requested permission to file a response brief in opposition to the summary enforcement of the administrative Order. That request was granted on March 23, 1990, and the brief was filed on April 2, 1990. On March 15, 1990, SFC filed a motion for leave to file its answer. That motion was also granted on March 23, 1990. Therefore, the motion to dismiss involving procedural challenges, and the petition for summary enforcement involving substantive matters are both ripe for adjudication.

III. MOTION TO DISMISS

A. Delegation of Power To Issue Subpoena

SFC argues that the subpoena issued by Deputy Inspector General Derek Vander Schaaf should be quashed because the Inspector General is not authorized to delegate the power to issue subpoenas under 5 U.S.C. App. 3 § 6. Section 6(a)(4) of the Inspector General Act provides that the Inspector General is authorized "to require by subpena [sic] the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary in the performance of the functions assigned by this Act...." Id. at § 6(a)(4). The Inspector General is given broad discretion to delegate his powers under section 6(a)(7), which provides that the Inspector General is authorized "to select, appoint, and employ such officers and employees as may be necessary for carrying out the functions, powers, and duties of the Office...." Id. at § 6(a)(7).
SFC argues that Congress specifically chose not to delegate the power to issue subpoenas because it expressly authorized delegation in subsections 6, 7, and 8. 5 U.S.C. App. 3 § 6(a)(6)-(8). To support its argument, SFC relies on Cudahy Packing Co. v. Holland, 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895 (1942), superseded by statute as stated in, Donovan v. National Bank of Alaska, 696 F.2d 678 (9th Cir.1983). In Cudahy Packing, the Supreme Court held that the Federal Trade Commission Administrator could not delegate his subpoena power under the Fair Labor Standards Act. The Court relied on the legislative history of the Act, which showed that Congress had specifically eliminated a provision granting the authority to delegate the subpoena power. Id. 315 U.S. at 366, 62 S.Ct. at 656. Therefore, Congress did not intend delegation authority to be implied in the statute.
Cudahy Packing is distinguishable from the instant case. Unlike the Fair Labor Standards Act the legislative history of the Inspector General Act does not reveal that Congress expressly rejected a delegation provision regarding subpoena powers. See S.Rep. No. 95-1071, reprinted in, 1978 U.S.Code Cong. & Admin.News pp. 2676, 2709. Rather, the Senate Report only *787 shows that Congress provided for delegation specifically in subsections 6, 7, and 8 to prevent denial of such authority. Therefore, there is no evidence that Congress did not intend to allow delegation of the subpoena power.
Furthermore, several courts have found that Cudahy Packing is an isolated case and confined to the Fair Labor Standards Act, and that the authority to delegate subpoena power is implied in other statutes. Cf., e.g., Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 119-23, 67 S.Ct. 1129, 1133-35, 91 L.Ed. 1375 (1947) (Emergency Price Control Act); Donovan v. National Bank of Alaska, 696 F.2d at 681-82 (Employee Retirement Security Act); NLRB v. John S. Barnes Corp., 178 F.2d 156, 159 (7th Cir.1949) (National Labor Relations Act); see generally Smith v. Fleming, 158 F.2d 791, 791-92 (10th Cir. 1946) (per curiam) (Emergency Price Control Act). The courts noted that the legislative history of these statutes did not show that Congress expressly rejected a delegation provision for subpoena powers. Therefore, this Court finds that the Inspector General was impliedly authorized to delegate the power to issue subpoenas pursuant to 5 U.S.C. App. 3 § 6, and SFC's argument is therefore without merit. See Wirtz v. Atlantic States Constr. Co., 357 F.2d 442, 445-46 (5th Cir.1966); see generally 5 U.S.C. § 903(a)(5) (authorization of officers to delegate their functions under Executive Reorganization Plans).

B. Service Of The Subpoena

Next, SFC contends that the subpoena should be quashed because service was insufficient. The subpoena was directed to the "Custodian of the Records." However, Mary Jean Dees, the receptionist, was served.
SFC argues that Fed.R.Civ.P. 45 applies, and "[t]he subpoena duces tecum calling on [a specific individual] to appear personally as a witness fails because it was not personally served...." Gillam v. A. Shyman, Inc., 17 Alaska 747, 22 F.R.D. 475, 479 (1958). Alternatively, SFC argues that service must be made on an officer, managing agent or general agent of that entity. Ghandi v. Police Dep't, 74 F.R.D. 115, 121 (E.D.Mich.1977).
DoD IG responds that Fed.R.Civ.P. 45 applies to judicial subpoenas and not administrative subpoenas. Fed.R.Civ.P. 45 (Advisory Committee Notes) ("It does not apply to enforcement of subpoenas issued by administrative officers...."); Fed.R. Civ.P. 81(a)(3); EEOC v. Maryland Cup Corp., 785 F.2d 471, 477 (4th Cir.), cert. denied, 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986); see also United States v. Westinghouse Elec. Corp., 788 F.2d 164, 166 (3d Cir.1986) (enforcement of DoD IG subpoena). DoD IG argues that service on the receptionist was sufficient because she was SFC's agent. See In re Equitable Plan Co., 185 F.Supp. 57, 59 (S.D.N.Y.), modified sub nom. Ings v. Ferguson, 282 F.2d 149, 153 (2d Cir.1960) (records restricted to those in possession of agent due to questionable removal of foreign documents); In re Grand Jury Subpoena Duces Tecum, 72 F.Supp. 1013, 1021 (S.D. N.Y.1947); see generally 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2461 at 447 (1971) (service on an agent of a corporation is sufficient). The Court agrees with DoD IG and SFC's motion to dismiss is consequently DENIED.

IV. PETITION FOR SUMMARY ENFORCEMENT OF ADMINISTRATIVE SUBPOENA.
The Court's role in evaluating an enforcement request "is a strictly limited one." FTC v. Texaco, Inc., 555 F.2d 862, 871-72 (D.C.Cir.1977) (en banc), cert. denied sub nom., 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977). The Court must only ask whether the courts' process would be abused by enforcement. SEC v. Wheeling-Pittsburgh Steel Corp., 648 F.2d 118, 125 (3d Cir.1981) (en banc).
The DoD IG argues that its subpoena meets all applicable criteria for judicial enforcement; and the fifth amendment prohibition of compelled testimony does not protect SFC's production of the requested business records. Braswell v. United States, 487 U.S. 99, 108 S.Ct. 2284, 2288, *788 101 L.Ed.2d 98 (1988) ("collective entity" rule); United States v. White, 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944); United States v. Radetsky, 535 F.2d 556, 568-69 (10th Cir.), cert. denied, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976). In this regard the Court finds under the facts of this case stated in section I that the doctors' business comprised a collective entity.
The DoD IG further argues that the CHAMPUS member doctors waived their fifth amendment privilege under the required records exception. E.g., Grosso v. United States, 390 U.S. 62, 67-68, 88 S.Ct. 709, 713, 19 L.Ed.2d 906 (1968); 32 C.F.R. § 199.7(b)(4)(i) (1988) (the office of "CHAMPUS ... may request and shall be entitled to receive information ... relat[ing] to ... treatment, or services...."). Furthermore, business records have no fifth amendment protection. E.g., United States v. Doe, 465 U.S. 605, 610, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984).
SFC argues that the subpoena should be quashed due to an improper delegation of power. The Court has already rejected that argument when considering the motion to dismiss. Alternatively, SFC asks this Court to modify the subpoena to exclude documents already produced to the FBI since they are duplicative. See United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-55, 13 L.Ed.2d 112 (1964) (Pursuant to statute IRS cannot retrieve duplicative information which is already in its possession.); see also Fed.R.Crim.P. 17(c) (regarding production of documents that are not otherwise procurable).
SFC further argues that the client medical records and surgery videotapes should be excluded from the subpoena. United States v. Plesons, 560 F.2d 890, 892-93 (8th Cir.), cert. denied, 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977). SFC contends that these records are kept individually by the individual doctors and not collectively by SFC. Also, SFC is not the custodian of these records and therefore the wrong entity was served. SFC argues that the authority relied on by DoD IG excluded client files from production. Cf. Bellis v. United States, 417 U.S. 85, 87 n. 1, 98 & n. 9, 94 S.Ct. 2179, 2182 n. 1, 2188 & n. 9, 40 L.Ed.2d 678 (1974) (exclusion of attorney's client files).
Moreover, SFC argues that the government is not entitled to documents that predate the existence of the partnership. Wheeler v. United States, 226 U.S. 478, 490, 33 S.Ct. 158, 162, 57 L.Ed. 309 (1913). SFC also argues that the required records doctrine under CHAMPUS does not require production of the client medical records or the videotapes. Grosso v. United States, 390 U.S. at 68, 88 S.Ct. at 713. Finally, SFC argues that the act of production, and admission of existence and authenticity is privileged. United States v. Doe, 465 U.S. at 608, 104 S.Ct. at 1240.
In reply DoD IG contends that it does not need duplicative documents already obtained by the FBI, but argues that it has no assurance that the information obtained by the FBI is complete. DoD IG also argues that it has met its burden of showing that the inquiry is within its authority, the information is reasonably relevant, and the request is not unduly burdensome. United States v. Morton Salt Co., 338 U.S. 632, 652-53, 70 S.Ct. 357, 368-69, 94 L.Ed. 401 (1950). DoD IG suggests that delivery of the following, along with a certification of completeness, would satisfy the warrant:
(1) the medical records maintained between January 1, 1985 and August 31, 1989 relating to the care and treatment of approximately thirty patients of SwFC which were subsequently billed to CHAMPUS; (2) videotapes of all surgeries performed on approximately one hundred patients between January 1, 1985 and August 31, 1989 which were later billed to CHAMPUS; (3) All lists or indices maintained by the SwFC doctors of patients that had a tubal reversal or artificial insemination procedure between January 1, 1985 and August 31, 1989; (4) All records disclosing the identity, address, date of birth, date of employment and title of position, for all employees of SwFC from January 1, 1985 and August 31, 1989; and (5) Any files retaining billings *789 to CHAMPUS or other insurance providers for 16 patients.
DoD IG's Reply Brief at 2 n. 1. The Court concludes that the government can insist on redundant information to assure completeness. See United States v. Lench, 806 F.2d 1443, 1446 (9th Cir.1986). However, SFC is hereby authorized to comply with the subpoena as required below through compliance with DoD IG's suggestion.
The DoD IG persuasively argues that the collective entity doctrine controls this issue as the custodian of records maintains the records in a representative capacity for SFC. Bellis v. United States, 417 U.S. at 98, 94 S.Ct. at 2188. Therefore, records that may be personally created by the individual doctors can be reached through a subpoena served upon SFC when the records are used to conduct the business of SFC as here. E.g., United States v. Lench, 806 F.2d at 1446. Further, records belonging to SFC that predate the limited partnership are held by the custodian of records of SFC in a representative capacity subject to the legal rights of the doctors. Cf. Wheeler v. United States, 226 U.S. at 490, 33 S.Ct. at 162 (subpoena was issued after corporation dissolved and thus records transformed into personal documents); cf. also Bellis v. United States, 417 U.S. at 98 n. 9, 94 S.Ct. at 2188 n. 9 (dictum that attorney's client files might be protected).
This Court is persuaded that the patient records in this case are business records which have no fifth amendment protection. See, e.g., United States v. Radetsky, 535 F.2d at 569 n. 14. The Court finds that the CHAMPUS regulations are broadly written and express that the office of CHAMPUS is entitled to the types of records requested in the subpoena. 32 C.F.R. § 199.7(b)(4)(i) (1988) (documents "necessary for the accurate and efficient administration of CHAMPUS benefits"). The Court further finds that the records sought by DoD IG are well within the purview of regulatory purposes since there is raised a legitimate issue as to whether CHAMPUS resources have been misapplied. The Court rejects SFC's contention that the investigation is a subterfuge to avoid payment of a legitimate CHAMPUS claim or merely an attempt to force settlement of pending claims. The fact that a criminal proceeding may follow the investigation is not relevant to this Court's inquiry. In re Grand Jury Proceedings, 801 F.2d 1164, 1168 (9th Cir.1986). Further, the Court finds that any impropriety by the FBI regarding delay of the return of copies of previously seized files has no impact on enforcement of the DoD IG's administrative subpoena. The Court finds no abuse by DoD IG of this Court's process, and prior conduct of a third party is irrelevant. SEC v. Wheeling-Pittsburgh Steel Corp., 648 F.2d at 125. These records are reasonably within the range of those required pursuant to a valid regulatory program and therefore have a "public aspect." Donovan v. Mehlenbacher, 652 F.2d 228, 231 (2d Cir.1981). The Court further finds that the video tapes and patient records appear to be customarily kept in the course of the business of SFC. This finding is based on the fact that the FBI previously retrieved approximately 112 patient files and 47 video tapes. This significant ratio of videotapes to patient files supports the government's contention that videotapes and patient files are customarily maintained in the course of business of SFC. Finally, the Court rejects SFC's argument that the act of production of these documents is testimonial in nature and is protected by the fifth amendment. Braswell v. United States, 108 S.Ct. at 2291; In re Grand Jury Proceedings, 801 F.2d at 1168-69. Therefore, the petition for summary enforcement of the subpoena is GRANTED and SFC's request for modification is DENIED.

V. CONCLUSION
Accordingly, the motion to dismiss is DENIED and the petition for summary enforcement of the subpoena is GRANTED. The Custodian of Records of SFC is hereby ORDERED to appear before James R. Flich, Special Agent in Charge; or his designee, at the Defense Criminal Investigative Service, Building 24, Room 17, Fort *790 Worth, Texas on June 11, 1990, at 10:00 a.m. The Custodian of Records of SFC is further ordered to bring and produce at the above specified time and place the documentary evidence identified in Court's Ex. A (attached).
IT IS SO ORDERED.

APPENDIX

COURT'S EXHIBIT A.
Furnish original documents as they relate to the Southwestern Fertility Center, 3617 West Gore Boulevard, Suite C, Lawton, OK 73505, specifically the following:
1. All medical records relating to the care and treatment of patients listed in DoD IG's Exhibit A (attached), which were subsequently billed to the Office of Civilian Health and Medical Program for the Uniformed Services (CHAMPUS), for the period of January 1, 1985 through August 31, 1989.
2. All billing information pertaining to claims submitted to CHAMPUS, on behalf of the patients listed in DoD IG's Exhibit A.
3. All videotapes of surgeries performed by either Dr. Bert M. Avery or Dr. John H. Migliaccio, or their assistants, on the patients listed in DoD IG's Exhibit A, for the period of January 1, 1985 through August 31, 1989.
4. All electronic data containing patient and/or billing information related to billings submitted to CHAMPUS on behalf of the patients listed in DoD IG's Exhibit A, for the period of January 1, 1985 through August 31, 1989.
5. All lists or indices maintained by Dr. Bert M. Avery, Dr. John H. Migliaccio and the Southwestern Fertility Center, 3617 West Gore Boulevard, Suite C, Lawton, OK 73505, of patients that had a tubal reanastomosis (tubal reversal) or artificial insemination procedure performed during the period of January 1, 1985 through August 31, 1989, which was subsequently billed to CHAMPUS.
6. All records providing the identity, address, date of birth, date of employment and title of position, for all employees of Southwestern Fertility Center, 3617 West Gore Boulevard, Suite C, Lawton, OK 73505, during the period of January 1, 1985 through August 31, 1989. A listing containing this information can be provided in lieu of the records specified.

 EXHIBIT A
PATIENT NAME SPONSOR NUMBER YEAR OF
 BIRTH
Alexander, Odessa XXX-XX-XXXX 1956
Alexander, Tronda XXX-XX-XXXX 1964
Anderson, Penny L. XXX-XX-XXXX 1952
Armistad, Lorraine XXX-XX-XXXX 1962
Atkinson, Martha E. XXX-XX-XXXX 1957
Avina, Laurentina XXX-XX-XXXX 1963
Axtell, Katherine XXX-XX-XXXX 1967
Barnes, Shelby J. XXX-XX-XXXX 1957
Bartlett, Linda C. XXX-XX-XXXX 1951
Belden, Sigrid XXX-XX-XXXX 1951
Berry, Lenora E. XXX-XX-XXXX 1957
Bibbs, Birgit A. XXX-XX-XXXX 1963
Blount, Tracey A. XXX-XX-XXXX 1960
Boarman, Mak XXX-XX-XXXX 1948
Bonilla, Evelyn S. XXX-XX-XXXX 1953
Brame, Linda XXX-XX-XXXX 1951
Bridgewater, Helen V. XXX-XX-XXXX 1961
Browning, Ruthie XXX-XX-XXXX 1961
Bryant, Ida M. XXX-XX-XXXX 1957
Buford, Vernice L. XXX-XX-XXXX 1962

*791
Buley, Linda S. XXX-XX-XXXX 1955
Burden, Carol A. XXX-XX-XXXX 1951
Burks, Helga XXX-XX-XXXX 1957
Butterfield, Carrie E. XXX-XX-XXXX 1961
Bynum, Queen XXX-XX-XXXX 1953
Campbell, Carolyn XXX-XX-XXXX 1953
Campbell, Sharline XXX-XX-XXXX 1954
Campoportocarrero, Kim XXX-XX-XXXX 1957
Cawley, Cheri L. XXX-XX-XXXX 1957
Chacon, Zenia XXX-XX-XXXX 1954
Champlin, Milta M. XXX-XX-XXXX 1956
Cheatham, Emma Y. XXX-XX-XXXX 1961
Childers, Debra A. XXX-XX-XXXX 1957
Christianson, Deborah XXX-XX-XXXX 1959
Clayton, Diane R. XXX-XX-XXXX 1952
Coleman, Vanessa D. XXX-XX-XXXX 1959
Conner, Kathy D. XXX-XX-XXXX 1960
Couch, Linda XXX-XX-XXXX 1950
Cox, Donna XXX-XX-XXXX 1955
Crawford, Arnita XXX-XX-XXXX 1956
Cuff, Diana M. XXX-XX-XXXX 1959
Daron, Linda D. XXX-XX-XXXX 1957
Deberry, Mary A. XXX-XX-XXXX 1961
Deeter, Sandra D. XXX-XX-XXXX 1955
Demond, Adine C. XXX-XX-XXXX 1959
Devore, Bonnie L. XXX-XX-XXXX 1954
Doherty, Vivian XXX-XX-XXXX 1960
Donnelly, Benjamas N. XXX-XX-XXXX 1951
Doraski, Annette M. XXX-XX-XXXX 1953
Easly, Debra XXX-XX-XXXX 1953
Easley, Vellita J. XXX-XX-XXXX 1958
Ewing, Marilyn M. XXX-XX-XXXX 1959
Farenteau, Laura XXX-XX-XXXX 1954
Feinberg, Cynthia C. XXX-XX-XXXX 1957
Felder, Velma J. XXX-XX-XXXX 1956
Ford, Patricia A. XXX-XX-XXXX 1959
Franklin, Bruna A. XXX-XX-XXXX 1955
Garcia, Patricia F. XXX-XX-XXXX 1962
Garvey, Gail L. XXX-XX-XXXX 1950
Gill, Carolyn XXX-XX-XXXX 1950
Glusco, Shell F. XXX-XX-XXXX 1969
Gordon, Angela T. XXX-XX-XXXX 1967
Gray, Valerie S. XXX-XX-XXXX 1957
Groomes, Patricia A. XXX-XX-XXXX 1962
Hall, Rosie L. XXX-XX-XXXX 1957
Hamod, Leslie A. XXX-XX-XXXX 1965
Hargrove, Lori XXX-XX-XXXX 1966
Harris, Linda F. XXX-XX-XXXX 1954
Harvey, Deanne M. XXX-XX-XXXX 1957
Hayes, Susan L. XXX-XX-XXXX 1964
Headen, Marilyn XXX-XX-XXXX 1960
Henderson, Brenda XXX-XX-XXXX 1958
Henry, Vicki L. XXX-XX-XXXX 1954
Hilsinger, Jan Marie XXX-XX-XXXX 1959
Holmes, Angela M. XXX-XX-XXXX 1963
Howerton, Peggy XXX-XX-XXXX 1957
Hubbard, Tami XXX-XX-XXXX 1961
Hunter, Jane XXX-XX-XXXX 1957
Huntley, Teresa XXX-XX-XXXX 1958
Hutchings, Christine XXX-XX-XXXX 1952

*792
PATIENT NAME SPONSOR NUMBER YEAR OF
 BIRTH
Jackson, Glennis G. XXX-XX-XXXX 1950
James, Mary Ann XXX-XX-XXXX 1950
Jarvis, Sophronia XXX-XX-XXXX 1958
Johnson, Kathleen XXX-XX-XXXX 1956
Johnson, Tanna L. XXX-XX-XXXX 1960
Johnson, Thelma XXX-XX-XXXX 1956
Johnson, Wanda D. XXX-XX-XXXX 1962
Juarez, Imelda XXX-XX-XXXX 1957
Kelly, Jacqueline XXX-XX-XXXX 1954
Kimble, Brigitte XXX-XX-XXXX 1956
Knue, Kimberly XXX-XX-XXXX 1965
Laboy, Marsha XXX-XX-XXXX 1959
Leuthold, Sandra L. XXX-XX-XXXX 1954
Marry, Barbara D. XXX-XX-XXXX 1956
Martin, Sheila XXX-XX-XXXX 1956
Massey, Kimberly XXX-XX-XXXX 1965
May, Michelle XXX-XX-XXXX 1960
McBride, Clara R. XXX-XX-XXXX 1961
McDaniel, Kathleen XXX-XX-XXXX 1956
Miles, Gwendolyn XXX-XX-XXXX 1955
Miller, Jane E. XXX-XX-XXXX 1957
Mills, Luanne F. XXX-XX-XXXX 1957
Miskiel, Cheryl XXX-XX-XXXX 1948
Mitchell, Robbin E. XXX-XX-XXXX 1962
Morgan, Joan XXX-XX-XXXX 1953
Muller, Susan XXX-XX-XXXX 1958
Mundt, Bonita XXX-XX-XXXX 1952
Neimeier, Karen W. XXX-XX-XXXX 1963
Newman, Evelyn XXX-XX-XXXX 1964
Norris, Mona R. XXX-XX-XXXX 1956
Parker, Jamie L. XXX-XX-XXXX 1958
Perez, Odelia XXX-XX-XXXX 1952
Perry, Yong XXX-XX-XXXX 1957
Phillips, Lynda L. XXX-XX-XXXX 1961
Pindell, Tammy J. XXX-XX-XXXX 1966
Purifoy, June B. XXX-XX-XXXX 1964
Quinata, Patsy XXX-XX-XXXX 1952
Riddick, Jacqueline XXX-XX-XXXX 1964
Rios, Linda L. XXX-XX-XXXX 1960
Rivera, Argelis XXX-XX-XXXX 1956
Roberts, Donnie XXX-XX-XXXX 1953
Rovinski, Janet XXX-XX-XXXX 1963
Samuelson, Julie A. XXX-XX-XXXX 1962
Sanchez, Maria XXX-XX-XXXX 1953
Sanford, Trenia L. XXX-XX-XXXX 1963
Santiago, Susan C. XXX-XX-XXXX 1961
Schnabel, Karin XXX-XX-XXXX 1957
Seaborn, Gisela W. XXX-XX-XXXX 1961
Smith, Martha M. XXX-XX-XXXX 1953
Strawder, Lucille G. XXX-XX-XXXX 1958
Sweeney, Barbara A. XXX-XX-XXXX 1954
Talley, Kathleen M. XXX-XX-XXXX 1957
Tatum, Anita J. XXX-XX-XXXX 1961
Taylor, Gail A. XXX-XX-XXXX 1948
Thornhill, Phyllis XXX-XX-XXXX 1945
Thrash, Natalie D. XXX-XX-XXXX 1956
Trejo, Madim XXX-XX-XXXX 1959
Triplett, Mary J. XXX-XX-XXXX 1959
Uthe, Irene F. XXX-XX-XXXX 1952

*793
PATIENT NAME SPONSOR NUMBER YEAR OF
 BIRTH
Wagner, Debra XXX-XX-XXXX 1960
Ward, Barbara XXX-XX-XXXX 1955
Ward, Catherine H. XXX-XX-XXXX 1962
Washington, Elif XXX-XX-XXXX 1950
Webber, Ollie P. XXX-XX-XXXX 1959
Wicks, Patricia A. XXX-XX-XXXX 1954
Williams, Adrenia M. XXX-XX-XXXX 1959
Williams, Debra XXX-XX-XXXX 1961
Williams, Debra G. XXX-XX-XXXX 1956
Williams, Katherine E. XXX-XX-XXXX 1951
Williams, Linda K. XXX-XX-XXXX 1959
Williams, Sheila R. XXX-XX-XXXX 1959
Wilson, Hae XXX-XX-XXXX 1954
Wilson, Penny R. XXX-XX-XXXX 1963
Worthy, Sadie XXX-XX-XXXX 1948

NOTES
[1] The search warrant requested medical records of specific patients, billing information (including computer records), memorializing the claims submitted to CHAMPUS for these patients, and videotapes documenting surgical procedures performed on them. The FBI seized this information for all but approximately thirty of the patients listed on the search warrant. The DoD IG's subpoena requests respondent SFC to produce the same information for all patients, including the records of the thirty patients not previously retrieved.

The Affidavit supporting issuance of the warrant indicated that all files seized or copies thereof would be returned within five days in order for the doctors' businesses to operate without undue interference. Some of those files or documents have allegedly not yet been returned, even though more than ninety days have elapsed.