668 F.2d 985
 2 Employee Benefits Ca 2369
 Raymond J. DONOVAN, Secretary of the United States
Department of Labor (formerly Ray Marshall), Appellant,
v.
John A. SHAW, Trustee, Savings and Profit-Sharing Pension
Fund of the Reliable Life Insurance Company
Employees, Appellee.
Raymond J. DONOVAN, Secretary of the United States
Department of Labor, Appellee,
v.
John A. SHAW, Trustee, Savings and Profit-Sharing Pension
Fund of the Reliable Life Insurance Company
Employees, Appellant.
 Nos. 81-1206, 81-1264.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 10, 1981.
Decided Jan. 21, 1982.
 
 T. Timothy Ryan, Jr., Sol. of Labor, Monica Gallagher, Associate Sol., Norman P. Goldberg, Counsel for Litigation, Jeffrey F. Krenzel, Edward A. Scallet, Attys., Plan Benefits Security Division, U. S. Dept. of Labor, Washington, D. C., for appellant, cross-appellee Raymond J. Donovan.
 Frank N. Gundlach, Robert L. Jackson, Thomas B. Weaver, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for appellee, cross-appellant John A. Shaw.
 Before HENLEY and ARNOLD, Circuit Judges, and NICHOL,* Senior District Judge.
 HENLEY, Circuit Judge.
 
 
 1
 In these consolidated appeals, the Secretary of Labor appeals the order of the district court, 507 F.Supp. 409, granting limited enforcement of a subpoena duces tecum issued by the Secretary to appellee/cross-appellant John A. Shaw, the trustee of the Savings and Profit-Sharing Pension Fund of the Reliable Life Insurance Company Employees (the Fund), to compel him to produce Fund records in connection with an investigation into the Fund's compliance with the fiduciary responsibility provisions of Title I of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1101-1114. The trustee, in a cross-appeal, contends that the district court erred in not quashing the subpoena. On cross-appeal we affirm. On appeal we vacate the limited order of enforcement and remand for further proceedings.
 
 
 2
 The Fund, which has been in existence since 1951, originally operated as a profit-sharing plan to provide retirement benefits to Reliable Life employees. It was "frozen" on January 1, 1967 when Reliable adopted a retirement pension plan. At that time each participating employee had the option to withdraw his share or leave it in the Fund until he terminated his employment with Reliable. Since the Fund was frozen, neither employer nor employee contributions have been made, and new employees have not participated.
 
 
 3
 The Fund has been tax exempt since its creation. When Congress enacted ERISA in 1974, the trustee for the Fund became concerned that amendments might be required to comply with the new legislation. After some discussion with the Internal Revenue Service (IRS), one of the agencies charged with administering and enforcing ERISA, the trustee independently concluded that the frozen trust was not required to comply with ERISA. He then requested a determination letter from the IRS stating that the Fund continued to be tax exempt. The IRS issued a letter confirming the Fund's tax exempt status on September 29, 1977.[1]
 
 
 4
 In May, 1980 the Department of Labor (DOL), the other agency charged with ERISA's administration and enforcement, issued the subpoena in question pursuant to its authority under ERISA § 504, 29 U.S.C. § 1134. The subpoena ordered the trustee to produce "(f)or the period October 1, 1974, to the date of return hereunder, all books, records, and documents pertaining to the (Fund)" and included a list of specific records sought.[2]
 
 
 5
 When the trustee refused to produce the materials requested, the Secretary brought an action in the district court to enforce the subpoena. At a show cause hearing held before a United States Magistrate, the trustee contended, inter alia, (1) that the Fund was not covered by Title I of ERISA and was therefore not subject to the Secretary's subpoena power under the statute and (2) that the favorable 1977 IRS determination letter demonstrated that the IRS had concluded that the Fund was not subject to ERISA,[3] and since DOL had bypassed the opportunity granted by ERISA § 3001, 29 U.S.C. § 1201, to participate in the determination letter process, it was now bound by the IRS's determination.
 
 
 6
 Addressing the trustee's first contention, the Magistrate noted that in a subpoena enforcement action, the court's inquiry is limited to whether the subpoena seeks materials that are reasonably relevant to a lawfully authorized purpose. He concluded that the challenge to DOL's jurisdiction at that stage of the proceedings was premature.
 
 
 7
 In considering the trustee's second contention, the Magistrate initially reviewed the relationship between DOL and the IRS under ERISA.[4] He then stated:
 
 
 8
 To assist employers in the development of pension plans, the IRS issues determination letters indicating whether proposed plans or plan amendments qualify for the special tax treatment granted by the tax provisions of ERISA. The Department of Labor also is granted a significant degree of participation in the determination letter procedure....
 
 
 9
 In addition to these participation rights, section 3001(d) (29 U.S.C. § 1201(d) ) of ERISA provides in pertinent part:
 
 
 10
 If the Secretary of the Treasury ... issues a determination letter to the applicant, the Secretary shall notify the Secretary of Labor of his determination and furnish such information and material relating to the application and determination held by the Secretary of the Treasury as the Secretary of Labor may request for the proper administration of subchapter I (regulatory provisions) of this chapter. The Secretary of Labor shall accept the determination of the Secretary of the Treasury as prima facie evidence of initial compliance by the plan with the standards of parts 2 (participation and vesting), 3 (funding), and 4 (fiduciary responsibility) of subtitle B of subchapter I of this chapter.
 
 
 11
 Marshall v. Shaw, No. 80 Misc. 104, slip op. at 5-6 (E.D.Mo., Nov. 4, 1980) (brackets in original).[5]
 
 
 12
 The Magistrate concluded that although the principles of res judicata and collateral estoppel do not ordinarily bar an administrative investigation, in the context of ERISA, there was a specific provision requiring the Secretary of Labor to accept the IRS's favorable determination letter as prima facie evidence of initial compliance with the provisions enumerated above. Thus, the Magistrate determined that in a subpoena enforcement proceeding the Secretary of Labor must "make some showing why the statutory prima facie effect of the determination of compliance by an agency with equal expertise should not limit his investigation into compliance with the specified provisions." Id. at 8. Because he found that the Secretary failed to make any showing to rebut the prima facie evidence of compliance, the Magistrate recommended that "the subpoena be enforced with the limitation that enforcement be denied as to investigation into violations of parts 2 (participation and vesting), 3 (funding), and 4 (fiduciary responsibility) of subtitle B of ERISA occurring on or prior to September 29, 1977." Id. at 9.
 
 
 13
 The district court adopted this recommendation. Donovan v. Shaw, 507 F.Supp. 409 (E.D.Mo.1980).
 
 
 14
 We initially review the district court's implicit rejection of the trustee's first contention, to which the trustee, as cross-appellant, takes exception. Asserting that a challenge to DOL's jurisdiction in the subpoena enforcement proceeding was proper and thus should have been allowed, the trustee argues on appeal that the district court should have quashed the subpoena because the IRS's advance determination that the Fund was tax qualified implicitly established that it was not subject to ERISA's provisions. The trustee also contends that DOL has no jurisdiction over the Fund since it is not an "employee pension benefit plan" or "pension plan" within the meaning of those terms in section 3 of ERISA, 29 U.S.C. § 1002(2).
 
 
 15
 It is well-settled that a subpoena enforcement proceeding is not the proper forum in which to litigate the question of coverage under a particular federal statute. E.g., Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 508-09, 63 S.Ct. 339, 342-43, 87 L.Ed. 424 (1943); EEOC v. Quick Shop Markets, Inc., 526 F.2d 802, 803 (8th Cir. 1975). This question, reserved for initial determination by the administrative agency seeking judicial enforcement of its subpoena, e.g., Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 214, 66 S.Ct. 494, 508, 90 L.Ed. 614 (1946); 526 F.2d at 803, cannot be resolved before the agency has had an opportunity to examine the relevant records. 317 U.S. at 508-09, 63 S.Ct. at 342-43. Thus, in a subpoena enforcement action, the agency cannot be required to demonstrate that the very matter or entity it seeks to investigate under its statutory investigatory powers is covered by the enabling statute since the "(a)uthority to investigate the existence of violations ... include(s) the authority to investigate coverage."[6] It follows that the district court properly refused to allow the trustee to assert a defense of lack of coverage in the subpoena enforcement proceeding. The material sought by the subpoena was not plainly irrelevant to lawful purposes of the DOL and it was the duty of the district court to order its production.
 
 
 16
 Just as an administrative agency is not required to establish coverage under a particular federal law when it seeks judicial enforcement of its subpoena, the issuing agency generally need not make any factual showing that a law has been violated as a condition precedent to enforcement. United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-55, 13 L.Ed.2d 112 (1964); Oklahoma Press Publishing Co. v. Walling, 327 U.S. at 208, 209, 66 S.Ct. at 505; EEOC v. Chrysler Corp., 567 F.2d 754, 755 (8th Cir. 1977); FTC v. Texaco, Inc., 555 F.2d 862, 874, 880 (D.C.Cir. en banc), cert. denied, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977). The showing of reasonable cause required to support an application for enforcement of a subpoena duces tecum "is satisfied ... by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry." 327 U.S. at 209, 66 S.Ct. at 505; see 379 U.S. at 57-58, 85 S.Ct. at 254-55.
 
 
 17
 In the instant case section 504 of ERISA authorizes the Secretary of Labor to investigate "whether any person has violated or is about to violate any (Title I) provision ...." 29 U.S.C. § 1134(a). In addition to incorporating by reference the broad administrative subpoena powers granted to the Federal Trade Commission,[7] 29 U.S.C. § 1134(c), the section contains two well-defined limitations on the Secretary's investigative powers, id. § 1134(a)(2), (b). Since none of these limitations applies to the facts of this case, the Secretary argues that full enforcement of the subpoena is required. He further relies on the body of law that generally provides that regulatory agencies with subpoena power derived from the Federal Trade Commission Act, 15 U.S.C. §§ 49-50, need not make a factual showing of possible violation prior to judicial enforcement of their subpoenas. E.g., Oklahoma Press Publishing Co. v. Walling, supra. Thus, the Secretary concludes that the limitation imposed in the instant case is improper since it was based on a provision found in section 3001(d) of Title III of ERISA, 29 U.S.C. § 1201(d), which deals solely with coordination between the IRS and DOL in administering and enforcing the statute.
 
 
 18
 We agree that the district court grafted an improper requirement, derived from a provision found in Title III of ERISA, onto enforcement of the Secretary's subpoena. The court's interpretation in effect determined that when the Secretary of Labor's subpoena under ERISA § 504, 29 U.S.C. § 1134, is directed to documents that predate a pension plan's receipt of a favorable IRS determination letter, the language of the Title III provision supplants the general rule that a regulatory agency seeking judicial enforcement of its subpoena is not required to adduce evidence showing a possible violation prior to enforcement. We do not believe that the Title III provision on which the court relied to limit enforcement of the subpoena eradicates the general rule and imposes on the Secretary the requirement of establishing a lack of compliance with the fiduciary responsibility provisions before he may obtain material relevant to his investigation.
 
 
 19
 As we have noted, section 504 contains two well-defined limitations on the Secretary's power to conduct investigations. See 29 U.S.C. § 1134(a)(2), (b). Under both these provisions, which do not apply to this case, the Secretary must establish "reasonable cause to believe there may exist a violation," id., as a condition to enforcement of his subpoena. It is clear from the legislative history that Congress carefully considered these limitations and did not entertain any other proposals that would have restricted the Secretary's investigative powers by imposing a blanket requirement of establishing reasonable cause to investigate. H.R.Rep.No.533, 93d Cong., 1st Sess. 153 (1973), reprinted in 2 Subcomm. on Labor, Senate Comm. on Labor and Public Welfare, Legislative History of the Employee Retirement Income Security Act of 1974, at 2333 (1976) (H.R. 2 as reported) (hereinafter cited as Legislative History of ERISA); Conference Rep. No. 1280, 93d Cong., 2d Sess. 328-29 (1974), reprinted in 3 Legislative History of ERISA, at 4595-96 (report accompanying H.R. 2); S.Rep.No. 127, 93d Cong., 1st Sess. 110, 174 (1973), reprinted in 1 Legislative History of ERISA, at 498, 562 (S. 4 as reported); S.Rep.No. 127, 93d Cong., 1st Sess. 16-17 (1973), reprinted in 1 Legislative History of ERISA, at 602-03 (report accompanying S. 4); S.Rep.No. 383, 93d Cong., 1st Sess. 177-78 (1973), reprinted in 1 Legislative History of ERISA, at 956-57 (S. 1179 as reported). Likewise, there is no congressionally created yardstick against which any other factual showing by the Secretary must be gauged before the Secretary may obtain judicial enforcement of his subpoena. 29 U.S.C. § 1134; id. Noticeably absent from both the language and legislative history of section 504 is any limitation predicated on a distinction between tax qualified and non-qualified pension plans. Cf. Freund v. Marshall and Ilsley Bank, 485 F.Supp. 629, 633 (W.D.Wis.1979) (Title I of ERISA applies by its terms to all employee benefit plans within the meaning of ERISA § 3, 29 U.S.C. § 1002(1), (2), (3), without regard to tax qualification); 29 C.F.R. § 2530.200a-1 (1980) (standards of Title I apply generally to both "nonqualified" and "qualified" employee pension benefit plans). In addition, no special rules exist concerning the investigation of plans that have received an advance determination of tax exempt status from the IRS. From an examination of Title I, it is clear that when Congress intended a provision of Title III to be reflected in the interpretation of a Title I provision, it stated its intention in express terms. See 29 U.S.C. §§ 1135, 1140. This occasional express incorporation by reference of Title III provisions into Title I suggests that ERISA § 3001(d), 29 U.S.C. § 1201(d), contained in Title III, does not apply of its own force to ERISA § 504, 29 U.S.C. § 1134, found in Title I. See Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 370 n.14, 100 S.Ct. 1723, 1731, 64 L.Ed.2d 354 (1980).[8]
 
 
 20
 The district court in the instant case read the Title III provision to restrain the Secretary's investigative powers under Title I unless he demonstrates, through competent evidence, a possible violation occurring before the issuance of an IRS determination letter.[9] In light of the cases holding that a regulatory agency need not advance facts in support of its application for enforcement of a subpoena, and in the absence of some solid indication in the legislative history that such a gloss was intended, we find it unacceptable. Thus, the court's reliance on the Title III provision to limit enforcement of the Secretary's subpoena cannot stand.
 
 
 21
 In reaching this conclusion, we do not imply that the district court, in reconsidering the Secretary's enforcement request, must compel the Fund to produce each and every bit of the requested information or to produce it en masse at one time or place. Upon the Fund's motion and showing of good cause, see Iowa Beef Processors, Inc. v. Bagley, 601 F.2d 949, 954 n.5 (8th Cir.), cert. denied, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 876 (1979), the court may issue such appropriate protective orders, if any, as may be necessary. See Fed.R.Civ.P. 26(c).
 
 
 22
 As indicated, we affirm on cross-appeal; on appeal we vacate so much of the order of the district court as limits enforcement of the subpoena and remand for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Fred J. Nichol, Senior District Judge, District of South Dakota, sitting by designation
 
 
 [1]
 The determination letter contained the following qualification:
 This letter relates only to the status of your plan under the Internal Revenue Service Code. It is not a determination regarding the effect of other Federal or local statutes.
 The letter was accompanied by a document explaining the significance of a favorable determination letter. It stated in pertinent part:
 An employer may use a favorable determination letter as a basis for deducting on the income tax return the contributions to a plan. The qualification of a plan is determined from the information in the written plan document and supporting information submitted by the employer and indicates that the features of the plan conform with the requirements of Internal Revenue Code Section 401(a). But it is the actual operation of the plan that governs its continued qualification.
 A plan qualifies in operation if it is maintained according to the terms and limitations on which a favorable determination letter was issued....
 
 
 [2]
 The subpoena stated:
 Such books and records shall include, but shall not be limited to: plan documents, trust agreements, plan description, and all addenda thereto; administrative contracts; vouchers; ledgers and journals; records pertaining to all loan transactions and mortgages; bank statements; cancelled checks, check stubs, and deposit slips; all audit reports; all financial statements; records pertaining to all plan investments; records containing the names of all participants and beneficiaries; all reports or memoranda prepared for the plan by consultants; correspondence between plan trustees and consultants; records pertaining to surety bonds and all other insurance policies; and minutes or records of meetings of plan trustees.
 
 
 [3]
 In support of this assertion, the trustee notes that after Congress enacted ERISA, no substantive amendments were made to the Fund that would purportedly have brought it into compliance with the statute. He contends that the IRS determination letter granting the Fund tax-exempt status notwithstanding the Fund's claimed noncompliance indicates that it is not governed by ERISA's provisions
 
 
 [4]
 The Magistrate's decision states:
 Primary responsibility for the enforcement and administration of the coverage, reporting, disclosure, fiduciary responsibility and prohibited transaction provisions of ERISA rests with the Department of Labor. The Secretary of Labor is authorized to bring a civil suit to enjoin any practice which violates any of the regulatory provisions of ERISA. 29 U.S.C. § 1132(a)(5). The authority of the Secretary of Labor to bring suit for violations of the participation, funding and vesting requirements is limited in part by a requirement that he must be so requested by plan participants, beneficiaries, or fiduciaries, or by the Secretary of the Treasury. 29 U.S.C. § 1132(b). Enforcement of these provisions lies largely with the Department of the Treasury and the IRS and is accomplished by the grant or denial of tax exemptions and deductions for ERISA qualified plans....
 Marshall v. Shaw, 80 Misc. 104, slip op. at 5 (E.D.Mo., Nov. 4, 1980).
 
 
 [5]
 Raymond J. Donovan was substituted for F. Ray Marshall, the former Secretary of Labor
 
 
 [6]
 Once the agency has investigated and determined the issue of coverage, its decision is reviewable in an appropriate proceeding. EEOC v. Quick Shop Markets, Inc., 526 F.2d 802, 803 (8th Cir. 1975)
 
 
 [7]
 See 15 U.S.C. §§ 49-50
 
 
 [8]
 We also note that nothing in the language or legislative history of the Title III provision indicates that it should be applied to section 504
 
 
 [9]
 The rationale for this determination was based on the assumption that the IRS had reviewed actions of plan fiduciaries before issuing its determination letter and found that those actions complied with ERISA's fiduciary responsibility provisions
 On appeal the Secretary contends that this construction of section 3001(d) ignores both the IRS's and DOL's construction of this section as one setting forth purely interagency procedures relating to the IRS's issuance of determination letters and having no bearing on subpoena enforcement actions. Referring to DOL and IRS affidavits submitted after the show cause hearing but before the district court's judgment, the Secretary argues that the IRS merely examined the trust instrument and other fundamental plan documents to determine their initial compliance with ERISA's structural requirements. He asserts that he is charged with the responsibility of examining the operational aspects of a retirement plan to determine if it complies with ERISA's fiduciary provisions and that the district court's position usurps his statutory authority.
 We note that it is not apparent from the district court's decision whether the court considered the affidavits on which the Secretary relies. In any event, we do not address these contentions since we find that the district court's limitation of enforcement is not supported by the context and legislative history of ERISA § 504, 29 U.S.C. § 1134.